# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 17, 2010

## JOCQUES LYONS v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Rutherford County
### No. F-61484     Don Ash, Judge

### No. M2009-00940-CCA-R3-PC - Filed April 7, 2010

The Petitioner, Jocques Lyons, was charged with one count of first degree premeditated murder, one count of first degree felony murder, and one count of especially aggravated robbery. On June 27, 2007, he pleaded guilty to one count of second degree murder and one count of especially aggravated robbery, accepting under the terms of his plea agreement a twenty-five year sentence for each charge, to be served concurrently as a violent offender at 100%. The Petitioner filed a petition for post-conviction relief on April 24, 2008. A post-conviction hearing was held on March 16, 2009, following which the post-conviction court denied the Petitioner relief. He now appeals that denial, contending that he is entitled to post-conviction relief because: (1) his plea was not knowingly and voluntarily entered; and (2) trial counsel was ineffective in investigating the Petitioner's case. After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Mary Frances Parker, Murfreesboro, Tennessee, for the appellant, Jocques Lyons.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel; Assistant Attorney General; William Whitesell, District Attorney General; and J. Paul Newman, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The record contains very little information about the facts underlying the Petitioner's guilty plea. We glean from the record that during the second day of the Defendant's jury trial on charges of first degree murder and especially aggravated robbery, the Defendant decided to enter into a plea agreement with the State. At the plea submission hearing, the Defendant admitted that he shot and killed the victim during an armed robbery. The State also incorporated into the proof at the plea hearing the evidence already presented at trial and exhibits, including a statement of the Defendant, that it intended to introduce at trial. In exchange for his guilty pleas to second degree murder and especially aggravated robbery, the State agreed to concurrent twenty-five year sentences.

The Petitioner testified at his post-conviction hearing that he was born on November 12, 1987, and was thus twenty-one years old at the time of his post-conviction hearing. He said he was unhappy with the attorney who represented him when he pleaded guilty ("trial counsel"), for various reasons. The Petitioner contended that he had a right to be sentenced as a Range I, standard offender for his crimes, and therefore, believed that his sentence was illegal because he was sentenced as a violent offender.

The Petitioner said that trial counsel spent only thirty minutes explaining the State's plea agreement. This occurred after two days of testimony in the Petitioner's trial. The Petitioner said he did not want to accept the plea agreement; trial counsel said it was in the Petitioner's best interest to accept it. The Petitioner testified that: he did not feel he had a choice in taking the plea; he did not read the plea agreement; he thought he would be sentenced as a Range I, standard offender; and he thought he would receive a sentence of fifteen years.

On cross-examination, the Petitioner noted that he told the judge at his plea acceptance hearing that he had read his plea agreement. He also acknowledged that almost all of the State's proof had been presented at trial at the time he agreed to plead guilty. He maintained that trial counsel forced him to take the plea offer, and refused to answer whether the trial court asked him if he had been forced or coerced into taking the deal. He acknowledged that he signed a plea agreement that accurately stated his range and the sentence he received, and that the trial judge explained his sentence to him.

Trial counsel testified for the State. He said that he worked as an Assistant Public Defender and had represented the Petitioner a few times in juvenile court before representing him on the adult charge at issue in this case. He noted that the Petitioner had not completed high school and generally displayed a low IQ and poor comprehension skills. Trial counsel

was aware of this, however, and was certain that he explained the State's plea offer to the Petitioner and that the Petitioner understood it. Trial counsel also noted that the offer had been available for some time and that he and the Petitioner had discussed it throughout the trial preparation process. Trial counsel explained to Petitioner the evidence against him and opined that he would have a "very hard time winning at trial and that if [the Petitioner] lost on the murder trial he would go to jail for the rest of his life." Trial counsel said that the Petitioner accepted the plea agreement offer of his own accord.

Trial counsel said that two eyewitnesses testified against the Petitioner. The victim apparently lived for some period of time after being shot and received medical care at Vanderbilt University Medical Center ("VUMC") until his death. Trial counsel reviewed the victim's medical records with Dr. Thomas White, trial counsel's father, a retired anesthesiologist who had, in the past, worked as an emergency room doctor and in surgery. Dr. White told trial counsel that the victim's medical records contained no indication of malpractice on the part of VUMC: had there been any such indication, trial counsel said he would have hired a medical expert to testify on the Petitioner's behalf about an alternate cause of the victim's death.

On cross-examination, trial counsel said he discussed the victim's medical issues with the Petitioner. He also noted that, at trial, one of the State's forthcoming witnesses had been the medical examiner who performed the victim's autopsy; his testimony would have indicated that the victim's cause of death was a "[g]unshot wound of torso with complications." He admitted that the victim's medical records indicated that, following a particular surgery prior to the victim being transferred to VUMC, "sponge and instrument counts were not correct at the end of the case. We left lap sponges in the [victim's] abdomen." Dr. White, however, told trial counsel that it was not unusual to leave lap sponges and packing in a patient with the type of surgery the victim received, and he reiterated that this did not constitute malpractice. The doctor explained that the patient was being transferred to VUMC for further treatment due to the serious nature of the injuries. Finally, trial counsel noted his continuing belief that the Petitioner entered into a favorable plea agreement and would have served the rest of his life in jail had he continued with his trial.

The post-conviction court denied the Petitioner relief. He now appeals.

**Analysis**

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions

-3-

concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

**I. Involuntary and Unknowing Plea**

In State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), our supreme court set forth the procedure for trial courts to follow in Tennessee when accepting guilty pleas. Id. at 341. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11. A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

"[T]he determination of whether a plea was entered voluntarily and knowingly is made based on the totality of the circumstances." State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App.1995).

> A court charged with determining whether those pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

The post-conviction court did not credit the testimony of the Petitioner at his post-conviction hearing, instead finding credible the testimony of trial counsel that the Petitioner understood his plea agreement. The trial court also noted that the Petitioner testified at his guilty plea hearing that he understood his plea and personally chose to plea guilty. Having

-4-

reviewed the transcript of the Petitioner's guilty plea and post-conviction hearings, we conclude that the evidence does not preponderate against the post-conviction court's findings. The record reflects the Petitioner knew and understood the options available to him prior to the entry of his guilty plea, including the right not to plead guilty and continue with his jury trial, and he freely made an informed decision of that course which was most palatable to him at the time.

We also note that the Petitioner's twenty-five-year sentence falls within the Class A felony sentencing range for a Range I offender. See Tenn. Code Ann. § 40-35-112(a)(1). Although his petition to enter the guilty plea, perhaps because of the possibility of sentencing credits, states that he would serve his second degree murder sentence at 85%, it also clearly states that his concurrent twenty-five year sentence for especially aggravated robbery would be served at 100%. Further, the trial court explained at the Petitioner's plea acceptance hearing that he would serve both sentences at 100%. This issue is without merit.

## II. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice

component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

On appeal, the Petitioner contends that trial counsel was deficient in his failure to review the victim's medical records with an independent medical expert, thus failing to uncover a possible alternative cause of the victim's death. The Petitioner asserts that, "had [trial counsel] hired an expert in the qualified [sic] to review the records and said records had indeed indicated malpractice on behalf of the treating physicians, [the Petitioner] would not have plead [sic] guilty to the charges." While this may be true, the Petitioner failed to establish, through the testimony of a medical expert at his post-conviction hearing, that VUMC did in fact commit medical malpractice and cause the victim's death.

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to discover or interview a witness inured to his prejudice.

Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Petitioner has thus failed to show a reasonable probability that, but for any errors by trial counsel, he would not have pleaded guilty. See Lockhart, 474 U.S. at 58. The Petitioner has not demonstrated that he is entitled to relief on this issue.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's denial of relief.

_____
DAVID H. WELLES, JUDGE